IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

IN THE MATTER OF THE ESTATE
OF IRA J. SANDERS, DECEASED,
RUTHER SANDERS, ADMINISTRATOR                                    PLAINTIFF

V.                                                CIVIL ACTION NO. 4:10cv107-DPJ-FKB

UNITED STATES OF AMERICA                                         DEFENDANT

ORDER

This medical-malpractice case is before the Court on Defendant's Motion for Summary Judgment [37]. Defendant argues that Plaintiff's expert report falls short of establishing the applicable standard of care, that any government employee breached that standard, or that any such breach caused the death of Plaintiff's decedent. Although the Court is sympathetic to Plaintiff's loss, it concludes that Defendant's motion should be granted.

I.    Facts and Procedural History

Ira J. Sanders was a veteran who received medical treatment through the Department of Veterans' Affairs. His primary care physicians worked at the Meridian Community Based Outpatient Clinic. In 2003, Sanders's doctors referred him to the Jackson VA Medical Center ("VAMC") for an esophagogastroduodenoscopy ("EGD"). Dr. Maher Azzouz, a board certified gastroenterologist, performed Sanders's EGD on December 10, 2003, which revealed a mass in Sanders's stomach. Plaintiff asserts that Sanders was never notified of the mass.

On January 26, 2004, Dr. Azzouz placed orders into Sanders's computerized medical records for a repeat EGD scheduled to be conducted March 12, 2004. Sanders traveled to the VAMC on that date, but was "told by staff members of the VA[MC] that there was no EGD scheduled for [Sanders] that day and that since he had an EGD performed with[in] the past year

that there was no necessity to repeat the test." Pl.'s Resp. [39] Ex. 5, Sanders Aff. ¶ 2.  No follow-up EGD was performed over the next four and a half years.

On July 8, 2008, Sanders was referred to the VAMC for admission and evaluation after complaining to his physicians in Meridian of problems with his appetite and weight loss, and of difficulties during and after eating a meal.  A EGD was performed and revealed a stomach mass later determined to be cancerous.  Sanders died shortly after his diagnosis of severe acidosis secondary to stomach cancer.

Ruther Sanders, in her capacity as administrator of the Estate of Ira J. Sanders, filed this Federal Tort Claims Act ("FTCA") lawsuit against the United States on June 21, 2010, alleging that the Government, "acting through its agents, servants and or employees at the Department of Veterans Affairs Hospital in Jackson, Mississippi[,] and also at the Meridian Community Based Outpatient Clinic" breached the applicable standard of care, proximately causing Sanders's death.  Compl. [1] ¶ VIII.  On September 29, 2011, the Court partially granted Defendant's motion to dismiss, noting that the parties had "agreed that the Court should grant the government's motion to dismiss all claims arising from the conduct of the Meridian Community Based Outpatient Clinic" and clarifying that "[t]he plaintiff's claims regarding Dr. Azzouz, an employee of the government, are not the subject of the motion to dismiss."  Order [29] at 1.  Other than Dr. Azzouz, Plaintiff has identified no specific government employee whose negligence allegedly contributed to Sanders's death.

Defendant now moves for summary judgment, asserting that Plaintiff's sole expert fails to satisfy Plaintiff's burden to prove the standard of care, that Dr. Azzouz or any other government employee breached the standard of care, or the necessary causal connection between any such

2

breach and Sanders's death. The Court has fully considered the premises and possesses personal and subject-matter jurisdiction.

II.     Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citations omitted).

III.     Analysis

Defendant argues that it is entitled to summary judgment because Plaintiff's expert report is insufficient to establish Plaintiff's medical-malpractice claims. Under the FTCA, the Court applies Mississippi law to Defendant's motion. *See* 28 U.S.C. § 1346(b)(1) (the substantive "law of the place where the act or omission occurred" governs FTCA claims). And under Mississippi law,

> [t]o present a prima facie case of medical malpractice, a plaintiff, (1) after establishing the doctor-patient relationship and its attendant duty, is generally required to present expert testimony (2) identifying and articulating the requisite standard of care; and (3) establishing that the defendant physician failed to conform to the standard of care. In addition, (4) the plaintiff must prove the physician's noncompliance with the standard of care caused the plaintiff's injury, as well as proving (5) the extent of the plaintiff's damages.

*Cheeks v. Bio-Med. Applications, Inc.*, 908 So. 2d 117, 120 (Miss. 2005) (citation omitted).

The success of a plaintiff in establishing these essential elements "rests heavily on the shoulders of the plaintiff's selected medical expert," because "[t]he expert must articulate an objective standard of care." *Estate of Northrop v. Hutto*, 9 So. 3d 381, 384 (Miss. 2009) (en banc). The expert testimony must be specific, "identif[ying] the particular(s) wherein the physician breached that duty and caused injury to the plaintiff patient." *Phillips ex rel. Phillips v. Hull*, 516 So. 2d 488, 491 (Miss. 1987) (en banc), *overruled on another grounds by Whittington v. Mason*, 905 So. 2d 1261 (Miss. 2005). "Not only must this expert identify and articulate the requisite standard that was not complied with, the expert must also establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries." *Hubbard v. Wansley,* 954 So. 2d 951, 957 (Miss. 2007) (en banc) (citations and quotations omitted). "Finally, in the context of negligent medical care, a plaintiff must show that 'proper treatment

4

would have provided the patient with a greater than fifty (50) percent chance of a better result than was in fact obtained.'" *Patton v. Mobile Medic Ambulance Serv., Inc.*, No. 3:07cv653-DPJ-JCS, 2009 WL 44206, at *4 (S.D. Miss. Jan. 6, 2009) (quoting *Hubbard*, 954 So. 2d at 964, (quotations and citation omitted).

Plaintiff attempted to meet these standards by designating as her sole expert Dr. Robert B. Sklaroff, a board-certified physician in internal medicine and medical oncology. Sklaroff represents that he is "familiar with . . . medical conditions [Sanders] experienced—as well as their complications and associated phenomena . . . ." Mot. Summ. J. [37] Ex. A, Sklaroff Report, at 2. He further states that he is "aware how [his] conclusions apply to internists, medical oncologists and hematologists both nationally . . . and in the region of Meridian, Mississippi." *Id.* The entirety of Sklaroff's expert opinion is contained in the final paragraph of his three-page expert report:

> Therefore, had [Sanders] been provided episodic follow-up gastroscopic evaluations, the [cancerous] lesion would have been detected at an earlier moment in its natural history . . . when it would have been amenable to surgical cure. It was beneath the standard-of-care for such monitoring not to have been offered to the patient during the half-decade between the detection of the pathological abnormalities and the establishment of the diagnosis of inoperable disease.

*Id.* at 3 (ellipsis in original).

Defendant identifies five deficiencies in Sklaroff's report. First, the report does not mention Dr. Azzouz—or any other government employee—by name as having breached the standard of care. Second, the report does not articulate the standard of care applicable to a gastroenterologist like Dr. Azzouz who performs a EGD. Third, the report fails to state that Sklaroff is himself familiar with the standard of care applicable to gastroenterologists. *See*

5

*Hubbard*, 954 So. 2d at 958 ("It is illogical to allow a proposed expert to testify as to the standard of care of a specialty with which he has demonstrated no familiarity."); *accord Berry v. Patten*, 51 So. 3d 934, 942 (Miss. 2010) (en banc). Fourth, the report fails to indicate whether Dr. Azzouz or some other government employee, rather than Sanders's primary care providers, had a duty to provide follow-up care after the 2003 EGD. All the report says is that, at some time "during the half-decade between the detection of the pathologic abnormalities and the establishment of the diagnosis of inoperable disease," someone should have provided follow-up gastroscopic evaluations to Sanders. Sklaroff Report at 3. Finally, the report does not indicate that "proper treatment would have provided the patient with a greater than fifty (50) percent chance of a better result than was in fact obtained." *Hubbard*, 954 So. 2d at 964 (quotations and citation omitted).

The Court agrees that these deficiencies in Sklaroff's report prevent it from creating a triable issue. *See, e.g.*, *Conn v. United States*, No. 3:10-CV-00300-CWR-LRA, 2012 WL 3064111, at *5 (S.D. Miss. July 24, 2012) (granting summary judgment in medical-malpractice case after finding expert report insufficient); *Crosthwait v. S. Health Corp. of Houston, Inc.*, 2010-CT-00526-SCT, 2012 WL 2044420, at *3 (Miss. June 7, 2012) (en banc) ("Where a plaintiff fails to present expert testimony as to the applicable standard of care, breach thereof, and proximate causation, summary judgment is mandated." (citation omitted)).

Plaintiff attempts to overcome these deficiencies by offering new opinions and theories based in part on her Amended Designation of Expert Witness. Pl.'s Resp. [39] Ex. 8. To evaluate these arguments, it is important to emphasize what Sklaroff actually opined and compare it to Plaintiff's summary-judgment response. As stated above, Sklaroff opines that had

someone placed Sanders on a monitoring program "the lesion would have been *detected* at an earlier moment." Sklaroff Report at 3 (emphasis added). Yet Plaintiff now seeks to avoid summary judgment by focusing on the mass detected in 2003. More specifically, she contends that (1) the earlier mass was "pre-cancerous"; (2) it was the same mass discovered in 2008; (3) the failure to perform the second EGD in March 2004 proximately caused Sanders death in 2008; (4) Dr. Azzouz had a non-delegable duty to ensure the second EGD; and (5) other "employees of the VA Hospital were negligent in not following the orders of Dr. Azzouz." Pl.'s Resp. [39] at 2–4. These arguments are procedurally and substantively insufficient.

Procedurally, a summary-judgment response must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324. This requires citation to supporting materials "in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). But in this case, the medical records Plaintiff cites do not describe the 2003 mass as "pre-cancerous," and they do not link the 2003 finding to the cancerous mass found in 2008. Thus, the factual predicate for the arguments remains unsupported.

Even more problematic is that none of the rebuttal theories find support in Sklaroff's report. Sklaroff never says the first mass was pre-cancerous or that it was the same mass found in 2008. In fact, his report suggests the opposite when he states that the second should have been "detected" earlier. Sklaroff Report at 3. As stated, medical-malpractice claims must be supported by expert opinion, and a party cannot offer expert opinions beyond the expert's report. *See* Fed. R. Civ. P. 26(a)(2)(B) (providing that retained expert must produce a report that contains "a *complete* statement of *all opinions* the witness will express and the basis and reasons

7

for them") (emphasis added); Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) . . . , the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."); *Mitchell v. City of Gulfport*, No. 1:01cv449-LG-RHW, 2005 WL 3116071, at *2 (S.D. Miss. Nov. 18, 2005) ("[E]xpert testimony is limited in scope to the opinions contained in written expert reports or in the [treating] physicians' office records." (citations omitted)). Accordingly, any theories related to the 2003 mass or other employees are not supported by materials "in a form that would be admissible in evidence" and must be disregarded. Fed. R. Civ. P. 56(c)(2).

Substantively, even if these theories were supported in the record and Sklaroff's report, the opinions suffer from the same specificity problems as those Sklaroff actually offered. For example, Plaintiff's expert designation fails to establish Sklaroff's familiarity with the standard of care applicable to any specific health-care provider's specialty. It is also unclear whether the applicable standard of care required any government employee to continue to provide follow-up care long enough to have detected the cancerous mass at a sufficiently early "moment in its natural history [that] it would have been amenable to surgical cure." Sklaroff Report at 3. Likewise, there is no evidence of a causal link between a failure to perform an EGD on March 12, 2004, and Plaintiff's subsequent death. *See Patton*, 2009 WL 44206, at *4. Stated another way, nothing suggests that Sanders's cancer would have been discernable by March 2004.

In sum, Sklaroff's report is insufficient under Mississippi law to create a question of fact regarding the theories he proffers. Moreover, Plaintiff cannot refocus the case based on facts and

expert opinions that are not supported in the record.  For these reasons, the Court concludes that Defendant's motion should be granted.

IV.     Conclusion

The Court has considered all of the parties' arguments.  Those not addressed would not change the result.  For the foregoing reasons, Defendant's Motion for Summary Judgment [37] is granted and Plaintiff's claims are dismissed with prejudice.  A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 26th day of September, 2012.

                                     s/ *Daniel P. Jordan III*
                                     UNITED STATES DISTRICT JUDGE